# IMPORTANT NOTICE

## "NOT TO BE PUBLISHED OPINION"

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED" PURSUANT TO RULE OF APPELLATE PROCEDURE (RAP) 40(D). THIS OPINION SHALL NOT BE CITED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE.

UNDER RAP 41, UNPUBLISHED OPINIONS OF KENTUCKY APPELLATE COURTS RENDERED AFTER JANUARY 1, 2003, THAT ARE FINAL UNDER RAP 40(G), MAY BE CITED BY A PARTY FOR CONSIDERATION BY A COURT IF THERE IS NO PUBLISHED OPINION THAT ADEQUATELY ADDRESSES THE POINT OF LAW BEING ARGUED BY A PARTY.

IF AN UNPUBLISHED OPINION IS CITED FOR CONSIDERATION BY A COURT THE OPINION SHALL BE SET OUT AS AN UNPUBLISHED OPINION IN THE DOCUMENT IN WHICH THE UNPUBLISHED OPINION IS CITED.

RENDERED: JUNE 25, 2026
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2024-SC-0335-MR

SAMUEL L. BAKER     APPELLANT

V.
    ON APPEAL FROM PULASKI CIRCUIT COURT
HONORABLE TERESA KAY WHITAKER, JUDGE
NO. 21-CR-00175

COMMONWEALTH OF KENTUCKY     APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

Samuel Baker was found guilty of murder, first-degree burglary, and being a second-degree persistent felony offender (PFO 2nd) and was sentenced to life in prison without the possibility of parole. Baker now appeals his conviction as a matter of right. KY. CONST. § 110(2)(b).

Baker contends that the trial court erred by permitting the Commonwealth to present irrelevant bad acts in violation of KRE[1] 404(b). He further argues that reversal is required because the trial court denied his request for a jury instruction on the lesser included offense of criminal trespass. After review, we hold that the trial court did not abuse its discretion and affirm.

---

[1] Kentucky Rules of Evidence

# I. BACKGROUND

On March 18, 2021, Robert Claunch was shot and killed in Ronald Baker's home in Pulaski County. Ronald Baker is the father of Baker. In the days leading up to Claunch's death, Baker and Ronald were in an ongoing argument. Initially, Ronald told officers that the argument had been related to a credit card, but he later informed them that the argument stemmed from Ronald burning Baker's needles and heroin. This resulted in an incident on March 14, 2021, four days prior to Claunch's death, when Baker fired a gun outside of Ronald's trailer to try to scare him, causing Ronald to call 911. A 9mm shell casing was later recovered and identified by Ronald as the one Baker fired during the March 14 incident.

On the day of the murder, Claunch and Ronald were smoking methamphetamine at Ronald's trailer in Pulaski County. Baker arrived at the trailer, and his father recognized his loud car approaching his home. Ronald testified that he warned Claunch that Baker had a gun before Baker entered the trailer and got into a heated exchange with Ronald. Claunch intervened by telling Baker to treat Ronald with a little more respect. Ronald then told Baker to leave the trailer, and he walked to his bedroom to go to bed for the night. However, once Ronald made it to his bedroom door, he heard gunshots and witnessed Claunch fall to the floor. He subsequently heard Baker's loud car drive away. Ronald frantically called 911. When police arrived, Claunch was already deceased. Based on the position of Claunch's body, police believed he was shot near the back door. Police located three 9mm shell casings near the

2

back door and a bullet hole in the kitchen curtain which had exited through the kitchen window.

Pulaski County police officers immediately attempted to locate Baker. They obtained a warrant to track Baker's phone, and he was eventually located in neighboring Casey County. Officers in Casey County had already received a complaint about Baker. John Peter Scheim spotted Baker on his property, and after a brief interaction, Baker fled. Because of Baker's strange behavior, Scheim called 911. Casey County officers located Baker shortly thereafter and attempted to pull him over. Baker fled, lost control of his vehicle, and crashed in a wooded area. Officers then chased him on foot into a creek bed where he was tasered and apprehended. The police later returned to the woods where the chase occurred to look for evidence connected to Claunch's death. Officers found a 9mm firearm wrapped in a piece of cloth. Baker's DNA was found on the firearm and the cloth. Later, the firearm was identified as the weapon that produced the shell casings recovered at Ronald's trailer from the incident four days prior.

Baker was charged with murder, first-degree burglary, being a felon in possession of a handgun, and being a second-degree persistent felony offender. In August 2023, Baker was released on bond and placed on house arrest with an ankle monitor. On November 11, 2023, Baker's mother, with whom he was living, called 911 and informed the operator that he had fled her residence. Baker had cut off his ankle monitor and stolen his mother's Corvette and two firearms. Baker and his girlfriend were eventually located in Kansas in a

3

different stolen vehicle. He was charged in Kansas for resisting arrest and being a felon in possession of a firearm.

At trial, the jury heard evidence about the earlier March 14, 2021 incident; the Casey County police pursuit; and Baker's flight from Kentucky and extraneous offenses that occurred during the flight. Baker was found guilty of murdering Claunch, of first-degree burglary, and of PFO 2nd. He was sentenced to life without the possibility of parole.

## II. ANALYSIS

Baker argues that the trial court abused its discretion by permitting the Commonwealth to present irrelevant other bad acts in violation of KRE 404(b), and that reversal is required because the trial court failed to instruct the jury on the lesser included offense of criminal trespass.

### A. The trial court did not abuse its discretion by admitting KRE 404(b) evidence.

The Commonwealth filed two pre-trial notices pursuant to KRE 404(c) regarding its intent to present KRE 404(b) evidence. In its first notice, the Commonwealth stated its intention to have Ronald testify about the incident on March 14, 2021; to introduce statements from Baker's mother and girlfriend that he was in possession of a firearm similar to the murder weapon; and to introduce evidence of Baker's flight into Casey County. Baker filed a motion in response to exclude all KRE 404(b) evidence. The Commonwealth later filed a second notice regarding its intention to introduce evidence that Baker fled from Kentucky after removing his ankle monitor and stealing his mother's car and

4

firearms, and that he was located by police in Kansas in a different stolen vehicle. Baker again objected.

After hearing arguments, the trial court excluded the statements of Baker's mother and former girlfriend but permitted the introduction of the remainder of the challenged KRE 404(b) evidence. Baker now appeals the introduction of evidence of: (i) the March 14, 2021, incident; (ii) the Casey County police pursuit and charges; and (iii) his flight from Kentucky to Kansas. These claims were preserved by Baker's objections to the Commonwealth's KRE 404(c) notices. *See Burdette v. Commonwealth*, 664 S.W.3d 605, 623 (Ky. 2023).

Under KRE 401, evidence must be relevant in order to be admissible. *See also Burdette*, 664 S.W.3d at 615. "[E]vidence is relevant if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence.'" *Id.* If the trial court finds the evidence relevant, it must then conduct a KRE 403 balancing test to assess whether its "probative value is substantially outweighed by the danger of undue prejudice." *Id.* "Generally, a defendant's prior bad acts are inadmissible because 'ultimate fairness mandates that an accused be tried only for the particular crime for which he is charged.'" *Clark v. Commonwealth*, 223 S.W.3d 90, 96 (Ky. 2007) (quoting *O'Bryan v. Commonwealth*, 634 S.W.2d 153, 156 (Ky. 1982)). KRE 404(b) mandates that "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."

5

It may, however, be admissible:

(1) If offered for some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake; or

(2) If so inextricably intertwined with other evidence essential to the case that separation of the two (2) could not be accomplished without serious adverse effect on the offering party.

KRE 404(b).

We have construed KRE 404(b) as exclusionary in nature, recognizing that the introduction of evidence of prior bad acts "should be 'closely watched and strictly enforced because of the dangerous quality and prejudicial consequences of this kind of evidence.'" *Clark*, 223 S.W.3d at 96 (quoting *O'Bryan*, 634 S.W.2d at 156). In *Bell v. Commonwealth*, this Court adopted a three-part inquiry to determine whether KRE 404(b) evidence can be properly admitted. 875 S.W.2d 882, 889 (Ky. 1994). It is an inquiry into relevance, probativeness, and prejudice. *Jenkins v. Commonwealth*, 496 S.W.3d 435, 457 (Ky. 2016). Reversal is appropriate only where the trial court's decisions to admit evidence amounts to an abuse of discretion. *Brewer v. Commonwealth*, 206 S.W.3d 313, 320 (Ky. 2006). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Id.* (quoting *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999)). We will review each piece of admitted KRE 404(b) evidence separately.

6

### i.    the March 14, 2021 incident

When the police responded to Ronald's trailer after the March 14, 2021 incident, Ronald told officers that he and Baker had a verbal argument. Ronald heard gunshots as Baker was leaving, and police later recovered a 9mm shell casing from his back doorstep. This incident was described in several police reports and the responding officer testified at trial.

Baker argues that the trial court's admission of evidence of the incident that occurred on March 14, 2021, was in error because the evidence was not relevant under KRE 401. He claims that there is no nexus between the events that occurred on March 14, 2021, and the murder that occurred four days later on March 18, 2021. Instead, he argues, "[a]ll the incident did was to cast Samuel as [a] hot-headed person that fought with his father." The Commonwealth asserts that admission of this incident was proper because it demonstrated the state of Baker's relationship with Ronald, demonstrated a potential motive to return to the trailer on March 18, 2021, and "gave the jury a complete picture of the events that unfolded surrounding Claunch's death."

First, the trial court did not err in finding that evidence of the incident on March 14, 2021, was relevant. There are direct connections between the March 14, 2021, incident and Claunch's murder four days later. As set forth more below, these connections are sufficient to establish that Baker had motive to murder Claunch. Evidence of motive is an important component of any murder trial. *See McGuire v. Commonwealth*, 368 S.W.3d 100, 110–11 (Ky. 2012) ("Although motive is not an element of a criminal prosecution,

7

nevertheless, evidence of motive is relevant and admissible to prove conduct consistent with the motive, as well as willfulness or criminal intent."). Thus, this evidence is relevant under KRE 401, and we decline to disturb the decision of the trial court.

Second, the trial court correctly found that this evidence tends to show evidence of motive. In admitting the evidence, the trial court properly relied on the three-part inquiry laid out in *Bell*, finding that the events that occurred on March 14, 2021, were relevant, probative, and did not unduly prejudice Baker. *See Bell*, 875 S.W.2d at 889. The trial court held that "the Commonwealth's presentation of the March 14, 2021 incident would be relative to show the motive of the defendant upon his return to the Ronald residence on March 18, 2021." We agree with the trial court that this evidence was admissible under KRE 404(b)(1).

To establish motive under KRE 404(b)(1), we require that there be a direct connection between the other crimes and the charged crime. *White v. Commonwealth*, 178 S.W.3d 470, 477 (Ky. 2005). "If protection against propensity evidence is to be meaningful, courts must limit the use of the 'motive' exception to situations where motive is pertinent to the issues of the case and where the other crimes evidence shows a motive to commit the charged offense and not just some offense[.]" *Id.* at 476.

The evidence elicited regarding the March 14, 2021, incident is sufficient to establish a direct connection to the murder on March 18, 2021. The police

reports and testimony reflect that Ronald informed officers of the March 14, 2021, incident, explaining that, on the night of the murder, he asked Baker to leave the trailer because of that prior incident. Furthermore, the jury heard Ronald's 911 call on the night of the murder. Ronald frantically told operators: "My son has been here *again.*" Ronald testified that he warned Claunch that Baker had a firearm on the night of the murder—information he was privy to because of the March 14, 2021, incident.[2] Additionally, on the night of the murder, officers recovered four 9mm shell casings. At least one of them was identified by Ronald as one he had retrieved after Baker fired a gun on March 14, 2021, and was subsequently linked to the murder weapon. The Kentucky State Police recovered the firearm that produced the four shell casings from Robert's residence in Casey County—including the shell casing from the March 14, 2021 incident. The DNA left on the firearm and accompanying cloth matched Baker, tying him to all four shell casings. Based on these facts, there is a clear and direct connection between the crime Baker committed on March 14, 2021 and the murder on March 18, 2021. The trial court properly admitted this evidence under KRE 404(b)(1) and did not abuse its discretion when admitting evidence of the incident that occurred on March 14, 2021.

### ii. the Casey County police pursuit and charges

Baker argues that the trial court's admission of the Casey County police pursuit and charges was error under KRE 404(b). He contends that the

---

[2] Ronald Baker testified, "I told Robbie, I said, he's got a gun so don't say nothing to him . . . because earlier that week . . . he scared me."

9

incident and charges "were used to cast Samuel as someone who had a criminal propensity." The Commonwealth asserts that admission of this evidence was proper because "the Casey County chase occurred as an inextricable, single course of conduct with the earlier events in Pulaski County."

First, this evidence is relevant under KRE 401. Just hours after Robert Claunch was murdered, Baker was involved in a police pursuit in Casey County. This Court has repeatedly held that "[a]s a general rule, proof of flight to elude capture or prevent discovery is admissible because 'flight is always some evidence of a sense of guilt.'" *Day v. Commonwealth*, 361 S.W.3d 299, 303 (Ky. 2012); *Hord v. Commonwealth*, 13 S.W.2d 244, 246 (Ky. 1928). The trial court did not err in admitting this evidence under KRE 401 because evidence of Baker's flight from Casey County officers tends to make his guilt more probable. *Rodriguez v. Commonwealth*, 107 S.W.3d 215, 219–20 (Ky. 2003) ("Evidence of flight is admissible because it has a tendency to make the existence of the defendant's guilt more probable: a guilty person probably would act like a guilty person.").

Second, the trial court did not err when it found that "pursuant to 404(b)(2), this evidence is so inextricably intertwined with other evidence essential to the case that separation of the two (2) could not be accomplished without serious adverse effect on the offering party." The trial court provided the following explanation:

> In the late evening hours of March 18, 2021, the Pulaski County Sheriff's Department is investigating the murder of Robert

Claunch. As they attempt to locate the defendant, the defendant has purportedly left the Ronald Baker residence (where Robert Claunch was murdered) and "fled" to Casey County, Kentucky. Just a few hours thereafter, the defendant is involved in a police pursuit after a property owner described his vehicle as being the vehicle involved in a trespass on his property. The police gave pursuit, and the defendant was arrested in the early a.m. on

March 19, 2021. Upon being able to search the location of where the defendant was arrested, a firearm was located and that firearm, according to the Commonwealth, is the weapon the defendant used to murder Robert Claunch just a few hours prior to his arrest. The Casey County charges (Case No. 21-M-00070) happened immediately thereafter and as a single course of conduct with the events of the late evening hours of March 18, 2021, in Pulaski County. The Casey County charges would likely be a part of the same indictment had they not occurred over the line in Casey County.

The trial court's explanation is supported by the record. This evidence is clearly admissible under KRE 404(b)(2). "[T]he rule is that all evidence which is pertinent to the issue and tends to prove the crime charged against the accused is admissible, although it may also prove or tend to prove the commission of other crimes by him or to establish collateral facts." *Stanford v. Commonwealth*, 793 S.W.2d 112, 116 (Ky. 1990) (quoting *Smith v. Commonwealth*, 366 S.W.2d 902, 906 (Ky. 1962)). Evidence of Baker's flight was inextricably intertwined with the context of Claunch's murder. Baker took flight from Casey County officers just hours after the murder. Subsequently, the firearm that was used to murder Claunch was discovered in the same area where the police pursuit occurred. Furthermore, both the firearm and a cloth placed over the firearm had Baker's DNA on it. This context was necessary to present to the jury as it tended to prove that Baker killed Claunch on March

11

18, 2021.  Therefore, we find no abuse of discretion in the admission of evidence of the police pursuit.

### iii.    *Baker's flight from Kentucky*

Baker argues that the trial court's admission of evidence of his flight from Kentucky in a stolen car and stolen firearm was error under KRE 404(b) and KRE 403.  The jury heard the following evidence:

> Samuel's mother testified that Samuel cut his ankle monitor[,] took her Corvette, took two guns, monitor, and left the state.  On November 23, 2023, Samuel was found in El Dorado[,] Kansas.  The local police there had been contacted by a gas station saying there were two people sleeping in the car in the parking lot.  The police ran the license plate of the car, and it came back that is reported stolen from Illinois.  Samuel and his girlfriend were in the car and a handgun was found in the passenger seat.  Samuel was charged in Kansas for interference for resisting arrest and being a felon in possession of a firearm.

(citations omitted).  In Baker's brief, he argues: "The jury was presented with a story that colored Baker as a multi-state criminal and that story has no relation to an expression of guilt in relation to this case."  He further contends that "[t]here is no probative value to this case as whether Samuel stole a car or possessed firearms in a different state," and that the prejudicial nature of the evidence substantially outweighed its probative value.  The Commonwealth argues that this evidence was admissible under KRE 404(b) and *Bell* because "KRE 404(b) is flexible enough to permit the prosecution to present the jury with a complete and unfragmented picture of the defendant's actions."

The trial court found that evidence of Baker's flight from Kentucky in a stolen car, his possession of two stolen firearms, and additional crimes

12

committed in Kansas during that flight would be admissible.  At trial, Baker's

mother and the two Kansas police officers who apprehended him testified. The

jury heard several extraneous offenses that Baker committed while in flight

from Kentucky.[3]

The trial court did not abuse its discretion when admitting this evidence

under KRE 401.  As discussed above, "proof of flight to elude capture or

prevent discovery is admissible because 'flight is always some evidence of a

sense of guilt.'"  *Day*, 361 S.W.3d at 303.  This includes flight while on bond.

*See Rodriguez*, 107 S.W.3d at 218; *Jackson v. Commonwealth*, 199 S.W.3d 763,

764–65 (Ky. App. 2006).  Although Baker's flight occurred years after the crime,

it is still relevant for purposes of KRE 401.  *See United States v. Oliver*, 397

F.3d 369, 376–77 (6th Cir. 2005) ("Immediacy is generally only relevant,

however, where 'the defendant does not know, or his knowledge is doubtful,

about the charges and accusations made against him' at the time of his

flight.  Where it is clear the defendant is aware of the charges against him, the

immediacy factor is not required to show consciousness of guilt.").  Baker was

aware of the charges made against him because he was on bond and removed

---

[3] Notably, defense counsel elicited the evidence that Baker was charged with crimes in Kansas on cross examination of an El Dorado police officer. The El Dorado police officer's cross examination went as follows:

> **Q.**    He was never charged in Kansas with any crime concerning that gun?
>
> **A.**    Concerning the gun, yes, he was.
>
> **Q.**    But he was not felonious, was he?
>
> **A.**    To our knowledge, he was already a convicted felon.

13

his ankle monitor before leaving his mother's house. Accordingly, the jury could infer that Baker stole his mother's Corvette and firearms as a means to facilitate his flight from Kentucky to avoid prosecution for Claunch's murder. *See Rodriguez*, 107 S.W.3d at 219 ("In other words, there was evidence to infer that Rodriguez stole the truck as a means to escape arrest for the robbery, rather than as an end in itself. Thus, the evidence was relevant and admissible subject to the balancing test of KRE 403."). Applying the same rationale, Baker's theft of an additional vehicle may support a reasonable inference that these actions were taken as a means to further facilitate his flight. The trial court did not err in admitting this evidence.

Furthermore, under KRE 404(b), the evidence of Baker's flight while on bond, along with other extraneous offenses, was admitted to show a consciousness of guilt within the meaning of KRE 404(b)(1). *Id.* at 219–20 ("Thus, we hold that the trial court properly admitted the theft of the truck and Rodriguez's subsequent attempt to elude the police because it was evidence of flight from the Save-A-Step robbery and, hence, it was offered for 'some other purpose,' *i.e.,* an expression of a sense of guilt, within the meaning of KRE 404(b)(1).").

Finally, considering the evidence under KRE 403, each of the extraneous offenses discussed above has probative value that substantially outweighs any potential for unfair prejudice. The jury can appropriately consider these acts because they were offered for "some other purpose" under KRE 404(b)(1). KRE

14

403; KRE 404(b)(1). This is true even in light of KRE 404(b)'s stringent prejudice standard.[4]

## B. The trial court correctly denied Baker's request for a jury instruction on criminal trespass as a lesser included offense.

At trial, Baker requested an instruction on criminal trespass as a lesser included offense of first-degree burglary. The trial court held a conference on the proposed jury instructions and heard arguments on the issue. The trial court found that there was no evidence introduced at trial which would warrant instructing the jury on criminal trespass. The jury was only instructed on murder and first-degree burglary. On appeal, Baker contends that the trial court erred in not permitting an instruction on criminal trespass. He argues that "a jury could have believed from the testimony that Samuel unlawfully entered Ronald's trailer but that he did not do so with the intent to commit a crime." The question of whether a trial court erred by not giving an instruction that was allegedly supported by the evidence is reviewed for abuse of

---

[4] In *Jenkins*, this Court remarked:

It should be noted that, technically, the prejudice/probative value inquiry under *Bell* and KRE 404(b) is a part of, but not necessarily all of, the prejudice/probative value inquiry required under KRE 403, which applies to relevant evidence generally and which allows for exclusion notwithstanding relevance when the evidence would be unduly prejudicial for any reason, not just because it invites an improper character inference. Trial courts thus should be mindful that the prejudice/probative value inquiry under KRE 403 is potentially broader than the similar inquiry *Bell* suggests is required under KRE 404(b). That does not mean, however, that in practice the two inquiries (if, indeed there are two inquiries) cannot be merged, as they often are.

496 S.W.3d at 458 n.17.

discretion.  *Sargent v. Shaffer*, 467 S.W.3d 198, 203 (Ky. 2015), *overruled on other grounds by, Univ. Med. Ctr., Inc. v. Shwab*, 628 S.W.3d 112 (Ky. 2021).

"In a criminal case, it is the duty of the judge to prepare and give instructions on the whole law of this case, and this rule requires instructions applicable to every state of case deducible or supported to any extent by the testimony."  *Taylor v. Commonwealth*, 995 S.W.2d 355, 360 (Ky. 1999).  This includes lesser included offenses of the primary charge. *See* KRS[5] 505.020(2).  "[A] lesser included offense is one which 'is established by proof of the same or less than all the facts required to establish the commission of the offense charged.'" *Colwell v. Commonwealth*, 37 S.W.3d 721, 726 (Ky. 2000) (citing KRS 505.020(2)).[6]  First-degree burglary is defined as follows:

> A person is guilty of burglary in the first degree when, with the intent to commit a crime, he or she knowingly enters or remains unlawfully in a building, and when in effecting entry or while in the building or in the immediate flight therefrom, he or she or another participant in the crime:
>
> (a) Is armed with explosives or a deadly weapon;

---

[5] Kentucky Revised Statutes.

[6] A defendant may be convicted of an offense that is included in any offense with which he is formally charged. An offense is so included when:

  (a) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged; or

  (b) It consists of an attempt to commit the offense charged or to commit an offense otherwise included therein; or

  (c) It differs from the offense charged only in the respect that a lesser kind of culpability suffices to establish its commission; or

  (d) It differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property or public interest suffices to establish its commission.

(b) Causes physical injury to any person who is not a participant in the crime; or

(c) Uses or threatens the use of a dangerous instrument against any person who is not a participant in the crime.

KRS 511.020(1). Criminal trespass is defined as a person "knowingly [entering] or [remaining] unlawfully in a dwelling." KRS 511.060(1). This Court has recognized that first-degree criminal trespass is a lesser included offense of first-degree burglary. *See McClellan v. Commonwealth*, 715 S.W.2d 464, 466–67 (Ky. 1986). However, the evidence presented at trial must support an instruction for a lesser included offense. *See id.* "An instruction on a lesser included offense is required only if, considering the totality of the evidence, the jury might have a reasonable doubt as to the defendant's guilt of the greater offense, and yet, believe beyond a reasonable doubt that he is guilty of the lesser offense." *Driver v. Commonwealth*, 361 S.W.3d 877, 888 (Ky. 2012). Therefore, "[t]he trial court has no duty to instruct on theories of a case that are unsupported by the evidence." *Id.*

We hold that the trial court did not abuse its discretion in concluding that the evidence did not warrant an instruction on the lesser included offense of criminal trespass. *Taylor v. Commonwealth*, 671 S.W.3d 36, 41 (Ky. 2023). Because we review for an abuse of discretion, "only where the decision to not give an instruction is 'arbitrary, unreasonable, unfair, or unsupported by sound legal principles' will the trial court be reversed." *Id.*

Although "[t]rial courts must construe the evidence in favor of the party seeking the instruction," *id.*, there was no evidence presented at trial for which

17

a jury could merely believe that Baker committed criminal trespass in this case. In rejecting the lesser included offense, the trial court explained that, if the jury credited Ronald's testimony, it could not reasonably find that Baker committed only criminal trespass. The testimony established that Baker entered the home uninvited, and Ronald subsequently asked him to leave, thereby revoking his license to remain on the property. Ronald then heard gunshots. Accordingly, under this account, the defendant was unlawfully present in the home at the time the victim was murdered. *See Colwell,* 37 S.W.3d at 727 ("[A]ll three degrees of criminal trespass are premised upon a jury's findings that the defendant did not enter or remain in or upon the victim's property 'with intent to commit a crime.' Here, the jury also found [Defendant] guilty of felony theft under an instruction which required the jury to believe beyond a reasonable doubt that he took a computer, television, stereos, and jewelry belonging to [the victim] with intent to deprive [the victim] of that property. Thus, the jury could not have possibly believed that [Defendant] entered or remained on the victim's property *without* 'the intent to commit a crime.'"). Here, because the burglary charge was given with a murder charge, the jury could not have believed that Baker entered or remained in Ronald's house without intent to commit a crime.

Furthermore, in *McClellan,* this Court held that the defendant was entitled to a criminal trespass instruction when the primary charge was first-degree burglary. 715 S.W.2d at 466–67 ("Even though the evidence was sufficient to justify a first-degree burglary verdict, the jury could have believed

18

appellant's testimony that he had no intent to commit a crime when he entered the room. In that case, he would have been guilty of criminal trespass only, and he was entitled to his requested instruction setting out his theory of the case."). However, the defendant in *McClellan* repeatedly testified that he did not enter a room with intent to harm anyone. Here, Baker waived his right to testify and no evidence of his mental state or intention was presented during trial. In fact, as mentioned by the trial court, Baker's defense was that he was not present at Ronald's house on March 18, 2021. *See Commonwealth v. Sanders*, 685 S.W.2d 557, 559 (Ky. 1985) ("[T]he trial court must instruct the jury according to the evidence. Here, Sanders' defense was alibi. We do not have testimony or circumstances that the jury could infer that there was presence in the house with no intent to commit a crime."). Therefore, there was no evidence presented during trial that would permit the jury to believe that Baker was guilty of criminal trespass only. The trial court did not abuse its discretion in refusing instruction on lesser included offense of criminal trespass.

## III. CONCLUSION

Based on the foregoing, we affirm.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Adam Meyer
Assistant Public Advocate


COUNSEL FOR APPELLEE:

Russell M. Coleman
Attorney General of Kentucky

Graham Pilotte
Assistant Attorney General